Maria REYNOSA and Antonio Reyno-
sa, Individually and as Next Friends
of David Reynosa, Appellant,

v.

Robert W. HUFF, M.D., Appellee.

No. 04–99–00701–CV.

Court of Appeals of Texas,
San Antonio.

April 19, 2000.

Carol P. Lomax, Branton & Hall, P.C., San Antonio, Alan K. Laufman, Law Office of Alan K. Laufman, J.D., M.D., Dallas, for appellant.

Charles A. Deacon, Renee Forinash McElhaney, W. Wendell Hall, Fulbright & Jaworski, L.L.P., San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 1989, Maria Reynosa, who was approximately twenty-five weeks pregnant, was involved in an automobile accident. She was admitted to the hospital two days later complaining of complications with her pregnancy. She remained in the hospital, and on November 19, 1989, Maria was moved into the labor and delivery room for delivery. At 1:00 a.m. on November 20, 1989, Dr. Brougher performed a sonogram on Maria and decided an emergency cesarean section was necessary. David Reynosa was born at approximately 1:15 that morning. He suffers from serious brain damage and neurological problems.

Maria and Antonio Reynosa brought suit individually, and on behalf of their son David, against the Bexar County Hospital District and numerous doctors, including Dr. Robert W. Huff. In their petition, the Reynosas alleged that while Maria was under the care of the defendants during the birth of her child, the doctors were negligent. Specifically, they maintained that Dr. Huff was present in the operating room supervising the residents who were performing cesarean deliveries on other patients, including the doctor who delivered David. The Reynosas asserted that Dr. Huff negligently failed to supervise that doctor and that his negligence was the proximate cause of their son's injuries.

Dr. Huff filed a traditional and a no evidence motion for summary judgment. In his motion, Dr. Huff asserted the defense of official immunity. He also argued that he owed no duty to the Reynosas, and that if he in fact owed them a duty, he neither breached that duty nor proximately caused any of their injuries. The trial court granted Dr. Huff's motion without stating its grounds for doing so. The Reynosas appeal, arguing that the trial court erred in granting Dr. Huff's motion. We disagree with the Reynosas' assertions and affirm the trial court's granting of the summary judgment motion.

### STANDARD OF REVIEW

The purpose of a no-evidence summary judgment motion is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Robinson v. Warner–Lambert & Old Corner Drug,* 998 S.W.2d 407, 410 (Tex.App.-Waco 1999, no pet. h.). It is much like a pretrial directed verdict, and this court applies the same legal sufficiency standard in reviewing a no-evidence summary judgment as that used to review a directed verdict. *See Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied); *Gomez v. Tri City Community Hosp., Ltd.,* 4 S.W.3d 281, 283 (Tex.App.-San Antonio 1999, no pet. h.). We therefore review the evidence in the light most favorable to the respondent against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Moore,* 981 S.W.2d at 269; *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Gomez,* 4 S.W.3d at 283. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner,* 953 S.W.2d at 711. However, less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Gomez,* 4 S.W.3d at 283 (citing *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)).

We review a summary judgment de novo. *See Reyes v. Storage & Processors, Inc.,* 995 S.W.2d 722, 725 (Tex. App.-San Antonio 1999, pet. ref'd). In deciding whether there was a fact issue

raised to preclude summary judgment, we take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve all doubts in the nonmovant's favor. *See Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

■ Because the order granting the summary judgment in this case does not specify the grounds upon which the trial court relied, we must affirm the judgment if either of the theories raised in the Appellee's motion for summary judgment is meritorious. *See State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993).

## MEDICAL MALPRACTICE

■ To prevail on a medical negligence cause of action, the plaintiff must prove the hospital or treating physician has a duty to act according to an applicable standard of care, a breach of that standard of care, an injury resulting from the breach, and a causal connection between the breach and the injury. *See Schorlemer v. Reyes,* 974 S.W.2d 141, 147 (Tex.App.-San Antonio 1998, pet. denied). A duty to act on a patient's behalf is triggered by a physician-patient relationship. *See St. John v. Pope,* 901 S.W.2d 420, 423 (Tex.1995). Only upon a physician's express or implied consent, does a physician-patient relationship come into being. *See id.* Where no prior relationship exists, the doctor must take some affirmative step to treat the patient before a relationship can be established. *See Ortiz v. Shah,* 905 S.W.2d 609, 611 (Tex.App.-Houston [14th Dist.] 1995, writ denied); *Lopez v. Aziz,* 852 S.W.2d 303, 306 (Tex. App.-San Antonio 1993, no writ). Simply being "on call" at a hospital does not establish a physician-patient relationship. *Ortiz,* 905 S.W.2d at 611; *Fought v. Solce,* 821 S.W.2d 218, 220 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Once such a relationship exists, however, the physician then owes the patient a duty to treat him or her with the skills of a trained, competent professional, and a breach of that duty may give rise to a malpractice action. *See id.*

### *Physician–Patient Relationship*

■ The Reynosas argue that Dr. Huff's presence in the labor and delivery room bound him to assure that Maria received adequate care. Mere presence in the labor and delivery unit, however, is inadequate to establish a physician-patient relationship. Instead, Dr. Huff must have taken some affirmative step toward advancing such a relationship. *See Ortiz,* 905 S.W.2d at 611. Here, Dr. Huff presented evidence in his motion for summary judgment that he never saw Maria, never spoke to her, and never gave anyone in the emergency room advice regarding how to care for Maria. The Reynosas presented no evidence to show that Dr. Huff even knew of Maria's presence in the labor and delivery room. We therefore cannot conclude that Dr. Huff had a duty to Maria because there is no evidence that a physician-patient relationship existed between them.

### *Duty Under Hospital Bylaws*

■ Despite the fact that Dr. Huff had no contact with Maria or her child, the Reynosas contend that a duty nevertheless existed between Dr. Huff and Maria and the child based on the University of Texas Health Science Center's bylaws and on Dr. Huff's presence in the labor and delivery unit on the night of David's birth. Specifically, the Reynosas argue that the hospital's bylaws charge every physician on its medical staff to ensure patients at the facility receive quality care. This charge, they claim, includes providing members of the faculty to supervise and direct resident physicians furnishing services to patients. In support of their allegations, the Reynosas rely on the deposition testimony of Dr. John Calkins. Dr. Calkins states that generally, an attending physician has a duty to supervise the residents and manage the

patients' care in the unit. He further asserts that as a faculty member, Dr. Huff assumed these attending physician responsibilities by entering the labor and delivery unit as an on-call physician and participating in the care of patients. Dr. Calkins maintains that as a result of his position as an attending physician, Dr. Huff had a duty to inquire about the status of the patients and to act for their benefit if necessary. However, Dr. Calkins also acknowledges that if Dr. Huff had been called in to care only for specific patients, Dr. Huff would not have assumed attending physician status.

The conclusive summary judgment evidence presented by Dr. Huff demonstrates that in fact, the procedure at the Health Science Center is for the back-up on-call physicians to be assigned to specific patients. Dr. Huff asserts he was assigned to specific patients other than Maria that night and that he was with those other patients throughout the two hours he was present in the hospital. Thus, according to Dr. Huff's undisputed evidence, he never assumed attending physician responsibilities as contemplated by Dr. Calkins and, therefore, he owed no duty to Maria and her child.

Dr. Calkins' testimony is based on his perception of what Dr. Huff's role is at the Health Science Center and on his own role at the University of Kansas. In fact, Dr. Calkins concedes that if Dr. Huff's role at the hospital on the night of David's birth was simply to care for specific patients other than Maria, then he would not have had a duty to care for and supervise the residents' care of all patients in the labor and delivery unit. Thus, Dr. Calkins' testimony is insufficient to rebut Dr. Huff's assertion that at the Health Science Center, on-call physicians are brought into the hospital to treat and care for specific patients.

### CONCLUSION

We find Dr. Huff conclusively established that he had no duty to Maria and her child and conclude that the trial court's granting of his motion for summary judgment was proper. We affirm the trial court's judgment and accordingly, we need not reach the Reynosas' additional issues.