MEMORANDUM OPINION

No. 04-05-00018-CV

CELADON TRUCKING SERVICES, INC.,
Appellant

v.

LUGO’S SECURITY AGENCY, d/b/a County Wide Security,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2004-CVF-001455-D1
Honorable Solomon Casseb, Jr., Judge Presiding



 
Opinion by:    Sandee Bryan Marion, Justice
 
Sitting:            Sarah B. Duncan, Justice
Karen Angelini, Justice
Sandee Bryan Marion, Justice
 
Delivered and Filed:   September 28, 2005

AFFIRMED IN PART; REVERSED IN PART AND REMANDED

            In the underlying litigation, Celadon Trucking Services, Inc. sued Lugo’s Security Agency
d/b/a County Wide Security for damages resulting from the theft of a trailer loaded with computers. 
Celadon asserted claims for breach of contract, negligence, and breach of express warranties. Lugo’s
counter-claimed for breach of contract. Lugo’s filed a no-evidence motion for summary judgment
on all of Celadon’s claims, which the trial court granted without stating its grounds. The trial court
severed Celadon’s claims from Lugo’s counter-claim, and this appeal by Celadon ensued. We
reverse the trial court’s judgment in favor of Lugo’s on Celadon’s breach of contract and negligence
claims, and affirm trial court’s judgment in favor of Lugo’s on Celadon’s breach of express warranty
claim. 
FACTUAL BACKGROUND
            Celadon operates a trucking company with a terminal in Laredo, Texas. Lugo’s operates a
security service in Laredo. There is no dispute that the parties entered into a written contract under
which Lugo’s agreed to provide security services to Celadon. There is also no dispute that the
agreement commenced on August 31, 1998 and expired on August 30, 1999. On November 22,
2000, a trailer loaded with computer parts was stolen from Celadon’s Laredo terminal. An
investigation into the theft revealed that a gate pass, which allowed the trailer to leave Celadon’s
terminal, contained the purported signature of Celadon dispatcher Michael Villareal. However,
Villareal was not on duty when the trailer left the yard. Celadon alleged it provided to Lugo’s a list
of signature exemplars and the signature on the gate pass did not match Villareal’s exemplar. Lugo’s
security guard on duty on November 22nd admitted he did not compare the signature on the gate pass
with Villareal’s exemplar. Although the trailer was later found, the cargo was not recovered.
STANDARD OF REVIEW
            We review a no-evidence summary judgment de novo by construing the record in the light
most favorable to the non-movant and disregarding all contrary evidence and inferences. Reynosa
v. Huff, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.). A party may move for a
no-evidence summary judgment on the ground that there is no evidence of one or more essential
elements of a claim or defense on which an adverse party would have the burden of proof at trial.
Tex. R. Civ. P. 166a(i). A no-evidence summary judgment motion is improperly granted when the
non-movant brings forth more than a scintilla of probative evidence that raises a genuine issue of
material fact. Id.; Gomez v. Tri City Cmty. Hosp., Ltd., 4 S.W.3d 281, 283 (Tex. App.—San Antonio
1999, no pet.). More than a scintilla of evidence exists if the evidence would allow reasonable and
fair-minded people to differ in their conclusions. Forbes, Inc. v. Granada Biosciences, Inc., 124
S.W.3d 167, 172 (Tex. 2003). Less than a scintilla of evidence exists if the evidence is so weak as
to do no more than create a mere surmise or suspicion of a fact. Id.
BREACH OF CONTRACT
            Lugo’s moved for summary judgment on Celadon’s breach of contract claim, asserting there
was no evidence of the existence of a valid, enforceable written or oral contract; no evidence that
Lugo’s breached any contract; and no evidence that any breach caused Celadon’s damages.
A.        Existence of contract
            Celadon asserted its contractual relationship with Lugo’s continued past August 30, 1999
because the parties continued to act as if the agreement was still in effect.
            A contract provision for an exact date of performance can be waived by the parties. Sieber
& Calicutt, Inc. v. La Gloria Oil & Gas Co., 66 S.W.3d 340, 347 (Tex. App.—Tyler 2001, pet.
denied) (Sieber continued to perform maintenance services at a refinery owned by La Gloria well
after the contract had expired by its own terms, and La Gloria continued to pay the invoices for those
services). An extension of time for performance can be either implied or express. Id. 
            An implied contract arises when circumstances disclose that, according to the parties’ course
of conduct and common understanding, there was a mutual intent to contract. See Double Diamond,
Inc. v. Hilco Elec. Coop., Inc., 127 S.W.3d 260, 267 (Tex. App.—Waco 2003, no pet.); City of
Houston v. First City, 827 S.W.2d 462, 473 (Tex. App.—Houston [1st Dist.] 1992, writ denied).
Whether mutual assent to contract exists is a question of fact. City of Houston, 827 S.W.2d at 473. 
When the evidence consists of the conduct of the parties and their course of dealing with one
another, then mutual agreement may be inferred from the circumstances, in which event the contract
is said to be “implied” as opposed to being an “express” contract. Double Diamond, 127 S.W.3d
at 267 . The existence of an implied contract, involving as it does an inference from circumstantial
evidence, is a question of fact. Id. 
            Celadon presented summary judgment evidence that Lugo’s continued to provide services
to Celadon until January 2001, and that Lugo’s invoiced Celadon for its security services. Lugo’s
does not dispute that its employee, Rene Estrada, was on duty as a security guard on the night of the
theft, November 22, 2000. We conclude Celadon’s summary judgment evidence is more than a
scintilla of probative evidence sufficient to raise a genuine issue of material fact on the issue of
whether a contractual relationship between Celadon and Lugo’s was in existence on the date of the
theft.
 
 
 
B.        Breach of Contract



            In response to Lugo’s motion for summary judgment, Celadon asserted Lugo’s breached its
duty to ensure that only authorized individuals took trailers from the yard, and breached its duty to
guard the property against theft. Lugo’s contends Celadon has not determined whether the theft was
committed by a person who was not authorized to enter and leave the premises, and there is no
evidence Lugo’s employees were obligated to prohibit unauthorized persons from leaving the
premises. According to Lugo’s, Celadon can show, at most, only that the authorized or unauthorized
person acted outside their authority in taking possession of the trailer. Lugo’s also asserts it had no
duty to prevent all theft, and it did no more than agree to guard the property. Lugo’s argues that
Celadon’s interpretation of the contract would make it the de facto insurer of Celadon’s entire
facility and all property that passed through Celadon’s shipping operation. Finally, Lugo’s contends
any duty to verify signatures may not have been instituted until six days after the theft, sometime
around November 28th.
            Celadon presented summary judgment evidence that Lugo’s security personnel performed
general duties, as required under the contract, as well as additional duties agreed to by Celadon and
Lugo’s. Among the general duties was the agreement that Lugo’s would “[p]ermit only duly
authorized persons to enter the premises.” Celadon presented no evidence that any person who was
not “duly authorized” entered the premises. 
            Additional duties took the form of “post orders.” Celadon alleged one of the post orders
required the guard to compare the signature on the gate pass with the exemplars. A Lugo’s
representative testified in deposition that the exemplars were not given to Lugo’s until after the theft
of the truck. Estrada testified he did not ensure that the signature on the gate pass matched the
exemplar “because we didn’t have the signatures.” However, Celadon’s representative, Jose
Benavides,


 testified that Lugo’s was given a list of currently employed dispatchers and exemplars
of their signatures. Benavides said a post order was in effect in November 2000 that required the
security guards to verify the dispatcher’s signature on the gate pass with the exemplars of their
signatures. Benavides said the order was created after a load of tires was stolen in the summer of
2000, and the post order was communicated to Lugo’s. Although Benavides could not say he saw
Villareal’s signature on a list on November 22nd because he was on vacation on the day of the theft,
when challenged about how he could remember whether the post order was in place on November
22nd, he explained:
            I can tell you I know that there was something in place there because we put
it in place after we had the incident with the first trailer, to verify signatures. Because
at that time, this company just went in there, a duck [sic] company, and just took it
out and nobody questioned it. And there was also a piece of paper, I believe, for it,
if I’m not mistaken.
 
Benavides testified that, sometime between November 28th and November 30th as part of the
investigation into the theft, the exemplar list was taken from the security station in order to make a
copy of the signatures. At this time, he saw Villareal’s signature on the list. 
            We conclude Celadon’s summary judgment evidence is more than a scintilla of probative
evidence sufficient to raise a genuine issue of material fact on the issue of whether Lugo’s breached
the contract by failing to compare the gate pass signature with an exemplar.
C.        Causation
            Celadon asserted the theft would not have occurred had Lugo’s guarded against theft because
the driver would not have been able to leave the yard with the trailer but for Lugo’s breach of the
contract. When asked whether the procedures that were in place in November 2000 would have
prevented the theft if followed, Benavides responded:
            No, they [the theft] wouldn’t never occurred.
 
. . .
 
            Very simple. That security guard that was in place there, because he had been
there such a long time, it should’ve been obvious. Here’s a trucking company and
it’s out of the norm and they’re pulling out a northbound trailer, that was one, and the
signature for Mike. He worked there every day, he was already used to seeing Mike’s
signature. If he would’ve paid attention to the pass and the little signature that was
there, that wasn’t Mike’s signature. So if he would’ve caught that and questioned it,
he would’ve probably prevented the trailer from leaving the facility. 
 
            Lugo’s asserts it is responsible for only those damages that result from a breach of the
contract if the theft was a natural, probable, and foreseeable consequence of Lugo’s failure to
perform its contractual duties. According to Lugo’s, Benavides’ testimony suggests only the
“possibility,” and not a “probability,” that adherence to the terms of the contract would have
prevented the trailer from leaving the premises. 
            In an action for a breach of contract, actual damages may be recovered when the loss is the
natural, probable, and foreseeable consequence of the defendant’s conduct. Mead v. Johnson Group,
Inc., 615 S.W.2d 685, 687 (Tex. 1981). Here, there is more than a scintilla of evidence in the
summary judgment record to indicate that damages of this nature were contemplated or foreseeable
as a consequence of Lugo’s actions. First, Celadon presented more than a scintilla of evidence that
one of the additional duties agreed to by Celadon and Lugo’s was that Lugo’s security guards would
verify the signature on the gate pass against the exemplars provided to Lugo’s. Second, Celadon
presented more than a scintilla of evidence that Lugo’s was provided with an exemplar of Villareal’s
signature on or before the date of the theft. Finally, Estrada admitted he did not ensure that the
signature on the gate pass matched Villareal’s exemplar. Celadon’s alleged damages, i.e., the theft
of a trailer allowed to leave the Celadon yard because a security guard failed to verify the gate pass
signature, was a foreseeable consequence of Lugo’s purported breach of the security agreement. 
            We conclude Celadon’s summary judgment evidence is more than a scintilla of probative
evidence sufficient to raise a genuine issue of material fact on the issue of whether Celadon’s loss
was the natural, probable, and foreseeable consequence of Lugo’s conduct.
NEGLIGENCE
            Lugo’s moved for summary judgment on Celadon’s negligence claim, asserting there was
no evidence that it breached a duty owed to Lugo’s or that any breach caused Celadon’s damages.
A.        Breach of Duty


 
            Celadon alleged Lugo’s security guards allowed a trailer to be taken from its yard by a driver
lacking authority from the on-duty dispatcher. Celadon alleged the failure to utilize signature
exemplars caused Lugo’s security guard to accept as valid a gate pass bearing the signature of a
dispatcher who was not on-duty. 
             Benavides testified that only Celadon tractors were allowed to take north-bound trailers that
were loaded with cargo. According to Benavides, north-bound Mexican carriers were allowed to
pull out only empty trailers. However, he said this policy was verbal and he could not remember
when the policy was created or implemented. Later in his deposition, when Benavides was asked
if he was “absolutely positive” that a policy had been implemented prior to November 2000 that
prohibited north-bound Mexican carriers to leave with a loaded trailer, he responded, “Yes. But I
would need to go back through files and documentation.” He also stated the policy was
communicated to Lugo’s and to Celadon dispatchers. Benavides later appeared to contradict his
earlier testimony when he said there was a list of authorized Mexican carriers that could leave the
premises with a north-bound trailer, and he could not remember if the procedures were reduced to
writing in November 2000. 
            We conclude Benavides’ testimony is more than a scintilla of probative evidence sufficient
to raise a genuine issue of material fact on the issue of whether Lugo’s breached a duty to prevent
an unauthorized north-bound Mexican carrier from leaving with a loaded trailer. For the reasons
stated above, we also conclude Celadon’s summary judgment evidence is more than a scintilla of
probative evidence sufficient to raise a genuine issue of material fact on the issue of whether Lugo’s
breached a duty to compare the gate pass signature with an exemplar.
B.        Causation
            Celadon’s and Lugo’s arguments here are the same as their respective arguments under the
causation element of a breach of contract claim. To prevail on a negligence cause of action, a
plaintiff must establish the existence of a duty, a breach of that duty, and damages proximately
caused by the breach. Doe v. Boys Clubs of Greater Dallas, Inc. 907 S.W.2d 472, 477 (Tex. 1995).
Proximate cause comprises two elements: cause in fact and foreseeability. Id. These elements
cannot be supported by “mere conjecture, guess, or speculation,” id., but may be based on either
direct or circumstantial evidence. Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 459 (Tex.
1992). Foreseeability means that a person of ordinary intelligence would have anticipated the danger
his or her negligence creates. El Chico Corp. v. Poole, 732 S.W.2d 306, 313 (Tex. 1987). The test
for cause in fact, or “but for cause,” is whether “the act or omission was a substantial factor in
causing the injury” without which the harm would not have occurred. Boys Clubs, 907 S.W.2d at
477 (citation omitted). 
            Celadon’s alleged damages, i.e., the theft of a trailer allowed to leave the Celadon yard
because a security guard failed to verify the gate pass signature, was a foreseeable consequence of
Lugo’s purported breach of the security agreement. Also, although Benavides articulated his
determination that the security guard’s failure to verify the gate pass signature in terms such as “he
would’ve caught that” and “he would’ve probably prevented the trailer from leaving the facility,”
we conclude that Benavides’ testimony is more than a scintilla of probative evidence sufficient to
raise a genuine issue of material fact on the issue of whether Celadon’s damages were proximately
caused by Lugo’s conduct.BREACH OF EXPRESS WARRANTIES
            Lugo’s moved for summary judgment on Celadon’s breach of express warranties claim,
asserting there was no evidence that any representation made by Lugo’s became part of the basis of
the bargain between the parties; no evidence that Lugo’s breached any warranty; and no evidence
that Celadon suffered any injury as a result of a breach of warranty.
            In its petition, Celadon relied on the following language in the contract: (1) a header that
states: “Crime Prevention Is Our Business,” and (2) a paragraph that states: “This agency maintains
a security service and has the means, equipment and employees for the surveillance and protection
of property against theft, burglary, fire, pilferage, malicious injury or destruction against property.” 
Celadon alleged Lugo’s breached an express warranty by failing to utilize or by not having the
means, equipment, and/or employees for the surveillance and protection of its property, and by
failing to utilize or have expertise in crime prevention. We will assume for the purpose of this appeal
that the language relied upon by Celadon constituted a warranty that became part of the basis of the
bargain between the parties. Therefore, we next consider whether Celadon adduced more than a
scintilla of evidence to raise a genuine issue of material fact on the issue of whether Lugo’s breached
this warranty.
            In support of its argument that Lugo’s breached an express warranty, Celadon relies on its
assertion that Lugo’s failed to guard its property and permitted unauthorized persons to enter and exit
its yard. We have already determined that Celadon presented no evidence that any person not
authorized to enter the yard did so. Assuming that Celadon’s evidence supports a finding that Lugo’s
failed to “guard” its property, there is no evidence in the record that Lugo’s did not actually have
“the means, equipment and employees for the surveillance and protection of property against theft,
burglary, fire, pilferage, malicious injury or destruction against property.” Therefore, we conclude
Celadon failed to bring forth more than a scintilla of probative evidence to raise a genuine issue of
material fact on one of the elements of its breach of warranty claim.CONCLUSION
            We reverse the trial court’s judgment in favor of Lugo’s on Celadon’s breach of contract and
negligence claims and we remand those claims to the trial court for further proceedings. We affirm
the trial court’s judgment in all other respects.
 
Sandee Bryan Marion, Justice