Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-11-00544-CV

Carlos M. **ZAFFIRINI**, Sr.,
Appellant

v.

**UNITED WATER SERVICES, LLC**,
Appellee

From the County Court At Law No. 1, Webb County, Texas
Trial Court No. 2006CVF0001712C1
Honorable Fred Shannon, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice

Delivered and Filed:  April 18, 2012

AFFIRMED

This is the second appeal involving an agreement between appellant, Carlos Zaffirini, and appellee, United Water Services ("United"). Zaffirini originally filed suit against United for breach of contract and for fraud. In the first appeal, we reversed the trial court's summary judgment in favor of Zaffirini and rendered judgment in favor of United that Zaffirini take nothing on his breach of contract claim. *See United Water Servs., L.L.C. v. Zaffirini* (*Zaffirini I*), No. 04-08-00211-CV, 2009 WL 136925, at *7 (Tex. App.—San Antonio Jan. 21, 2009, pet.

denied). We also determined the trial court erroneously rendered a final appealable judgment without addressing Zaffirini's fraud claim, and we remanded this claim to the trial court for consideration. Upon remand to the trial court, United filed traditional and no-evidence motions for summary judgment. The trial court granted these motions, dismissing Zaffirini's fraud claim. In this appeal, Zaffirini contends the trial court erred in granting summary judgment in favor of United. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the year 2000, United learned that the City of Laredo ("City") intended to privatize the operation of its water and wastewater facilities. In order to increase its chances of being awarded the contract, United retained Zaffirini as its attorney for an initial one-year term to assist in United's negotiations with the City. United and Zaffirini signed a Retainer Agreement on January 17, 2002. The essential terms of the Retainer Agreement provided that Zaffirini was to earn a one-time $50,000 payment upon execution of the Retainer Agreement and an additional $50,000 payment if and when United and the City entered into a contract. The Retainer Agreement further provided that if United was awarded the contract with the City, then Zaffirini would receive a contingency fee consisting of monthly payments of $3,000 for "the life" of the City contract.

The City subsequently awarded the contract to United, and they entered into a written contract on May 8, 2002 (the "Service Agreement"). The initial contract term between United and the City was for five years. Pursuant to the agreement between United and Zaffirini, United paid Zaffirini the $50,000 payment when the Retainer Agreement was signed and another $50,000 at the time the Service Agreement was signed by the City. United also began paying the contingency fee of $3000 per month. However, a dispute between the City and United

eventually caused the parties to agree to a mutual dissolution of the Service Agreement in 2005. As part of the dissolution, United paid the City $3 million dollars to obtain an early termination of the Service Agreement. A few months after the dissolution of the Service Agreement, United stopped paying Zaffirini the monthly payments. As a result, this fee dispute arose over whether Zaffirini was still due monthly fees under his Retainer Agreement with United.

Although Zaffirini amended his pleading after this court's remand in *Zaffirini I*, he still alleged the same claim—fraud. As support for his claim, Zaffirini relied on the language in an email by United's corporate counsel, Maria Laurino. The email was sent to Zaffirini before execution of the Retainer Agreement, during his discussions with United about the Retainer Agreement. Laurino stated in the email:

> I am in-house counsel for United Water. The following responds to your e-mail:
>
> . . .
>
> As to the termination: We have only failed to agree to the provision that disallows us from terminating **for cause** prior to the execution of the Service Agreement. As per general legal (and equitable) principals, we must be able to terminate for cause at any time.
>
> However, if we terminate **for convenience** *you receive all compensation you would have received had termination not occurred* (the $3,000 payment, **for the term of the Service Agreement**, will be reduced to present day value-note comment to attachment 1). If it was not clear that you would receive the $3,000 (reduced to present day value) it should be now. Since you will be made whole in the event we terminate for convenience, I assume that the $3,000 was the cause of your objection . . . ." (emphasis in italics in original and emphasis in bold added).

In his petition, Zaffirini alleged that he relied on Laurino's promise that if United terminated the Service Agreement "for convenience," then his contingency fee would still be paid for "the term" of that agreement. In other words, even if "the life" of the Service Agreement expired, he would still receive his monthly payments for what "the term" of the agreement would have been if it had not expired. He claimed United made this promise in an

attempt to fraudulently induce him into signing the Retainer Agreement. United again moved for traditional and no-evidence summary judgment.

In its traditional motion for summary judgment, United argued that, based on our decision in *Zaffirini I*, it could not be liable because United performed all of its contractual obligations owed to Zaffirini. Thus, United claimed the representations contained in the Retainer Agreement were not false. In its no-evidence motion for summary judgment, United contended there was no evidence to support the necessary elements of a cause of action for fraud. The trial court granted both of United's motions for summary judgment, without stating its grounds.

## DISCUSSION

In his third and fifth issues on appeal, Zaffirini argues the trial court erred in granting United's motion for a no-evidence summary judgment because he produced more than a scintilla of evidence on each of the elements of his fraud claim. In response to a no-evidence motion for summary judgment, the non-movant must produce summary judgment evidence raising a genuine issue of material fact to defeat the summary judgment under Rule 166a(i). TEX. R. CIV. P. 166a(i). A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of a challenged element is produced. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the non-movant fails to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movant's proof satisfied the burden for traditional summary judgment under Rule 166a(c). *Id.*; *see* TEX. R. CIV. P. 166a(c) (stating the burden for traditional summary judgment). Additionally, "[w]hen a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious." *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

We review a no-evidence motion for summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004); *O'Donnell v. Smith*, 234 S.W.3d 135, 140 (Tex. App.—San Antonio 2007), *aff'd,* 288 S.W.3d 417 (Tex. 2009). "We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). If the non-movant produces more than a scintilla of probative evidence to raise a genuine issue of material fact, the trial court cannot properly grant a no-evidence summary judgment. *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions," while less than a scintilla exists when the evidence is "so weak as to do no more than create mere surmise or suspicion." *Id.*

In a fraud cause of action, "[a] promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Additionally, "the mere failure to perform a contract is not evidence of fraud." *Id.* Instead, the non-movant must present evidence that the alleged misrepresentation was made with the intent to deceive and with no intention of performing as represented. *Id.*

In the no-evidence motion for summary judgment, United alleged there was no evidence pertaining to any of the elements of Zaffirini's fraud claim. The elements of fraud are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the

truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

Zaffirini alleged United misrepresented to him that he would receive a monthly contingency fee for "the life" of the Service Agreement, and that if United terminated the agreement "for convenience," he would still receive the monthly contingency fee for "the term" of the Service Agreement. The only summary judgment evidence adduced by Zaffirini in support of his contention that United knew the representation in the email from its corporate representative was false or made recklessly without any knowledge of its truth was (1) his own affidavit in which he alleged Laurino knew the representation was false or made recklessly; (2) Laurino's statement in the email pertaining to termination "for convenience"—which Zaffirini claimed was false because United later denied him the fee after the Service Agreement terminated; and (3) Laurino's deposition testimony where Zaffirini claims she admits to making the statement in the email about paying the fee for the term of the Service Agreement.

In Zaffirini's affidavit, he asserts that at the time Laurino created the email to Zaffirini, "she knew the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth." However, because Zaffirini provides no other facts in the affidavit to support his allegation, this is a conclusory statement. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). As a result, we will not consider this assertion because conclusory statements are not proper summary judgment evidence. *Id.* Additionally, contrary to Zaffirini's contention, the face of Laurino's

email does not demonstrate United knew the representation was false or made recklessly. Instead, the email simply contains United's representation, through Laurino, that Zaffirini was to be paid for "the term" of the Service Agreement if termination "for convenience" occurred.

Regarding Laurino's deposition, the specific portion on which Zaffirini relies as evidence that United knew the statement was false or made recklessly shows: (1) Laurino agreed Zaffirini "will be made whole in the event [United] terminates for convenience"; (2) because problems with the City existed during the term of the Service Agreement and the City was considering terminating for cause, United attempted to settle with the City via a mutual dissolution agreement; (3) Laurino informed her supervisor of the intent to pay Zaffirini "$3000 per month for life of the service agreement reduced to present-day value"; and (4) Laurino did not recall discussing the word "convenience" with Zaffirini during the drafting of the Service Agreement. Nothing in the deposition testimony relied on by Zaffirini indicates United or Laurino did not intend to continue to pay Zaffirini $3000 per month if United terminated the Service Agreement "for convenience."

As we held in *Zaffirini I*, the Service Agreement "was mutually dissolved as a way of avoiding litigation and as a compromise and release between the City and United." *Zaffirini I*, 2009 WL 136925, at *5. We also held that the City, which alone had the right to terminate for convenience, did not invoke the contractual provision giving it the right to do so. *Id.*

We conclude Zaffirini did not produce more than a scintilla of evidence that Laurino's statement about payment of the contingency fee was false or made recklessly without any knowledge of its truth at the time the statement was made. Therefore, Zaffirini did not meet his burden of producing summary judgment evidence raising a genuine issue of material fact on a challenged element of his fraud claim.

Accordingly, the trial court did not err in granting United's no-evidence motion for summary judgment on Zaffirini's fraud claim. Because we affirm the no-evidence summary judgment rendered on this claim, we do not address Zaffirini's issues as they relate to United's motion for traditional summary judgment.[1]

## CONCLUSION

We overrule Zaffirini's issues on appeal and affirm the judgment of the trial court.

Sandee Bryan Marion, Justice

---

[1] Zaffirini also claimed the trial court erred in granting United's no-evidence motion for summary judgment because it was based on his first amended petition pertaining to United's statement in the Retainer Agreement. However, because Zaffirini failed to raise a fact issue regarding his fraud claim based on the statement in Laurino's email, we need not address this issue.