

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00377-CV

ISABEL DE LA HOYA MORENO, ET AL., APPELLANTS

V.

K-BAR TEXAS ELECTRIC, INC., APPELLEE

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 15-04-24209; Honorable Pat Phelan, Presiding

March 10, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellants, the surviving spouse and children of Anthony Moreno, filed suit against Anthony's employer, Appellee, K-Bar Texas Electric, Inc., after Anthony died while performing work for K-Bar. Appellants alleged Anthony's death resulted from K-Bar's gross negligence. K-Bar filed a motion for summary judgment and, following a hearing on the motion, the trial court entered an order granting that motion. Via a single issue, Appellants challenge that order through this appeal. We affirm.

## BACKGROUND

In October 2014, Sundown ISD hired K-Bar to replace fifteen light poles on the playground at one of its schools. On the day of Anthony's death, employees of K-Bar were attempting to loosen or "break" the anchor bolts on the concrete bases of the light poles to determine whether the bolts could be removed or whether it would be necessary to remove the entire base. According to employee deposition testimony, this work did not involve or require contact with any electrical wiring or components.

Another K-Bar employee, the on-site supervisor, Andy Austin, was trying to loosen a bolt on one of the light poles. Andy was able to loosen the first bolt but had trouble with the second because it had become frozen due to age and oxidation. Anthony leaned over to help Andy with the wrench. Anthony got on his knees and leaned to push on the wrench. As he did so, he fell toward the pole and, upon contact, was electrocuted.

It is undisputed that, for purpose of the Texas Workers' Compensation Act, K-Bar was a workers' compensation subscriber at all times relevant to this litigation. *See* TEX. LABOR CODE ANN. § 401.001-419.007 (West 2015 and West Supp. 2019). As such, the exclusive remedy provision of the Act applied and the only remedy available for the death of an employee, other than statutory workers' compensation benefits, was a civil proceeding for the recovery of exemplary damages. *Id.* at § 408.001(a), (b) (West Supp. 2019). Accordingly, Anthony's family filed a wrongful death suit against K-Bar, alleging Anthony's death was caused by the gross negligence of the company.

K-Bar filed a motion for summary judgment under both the traditional and no-evidence provisions,[1] arguing it was not grossly negligent because K-Bar did not have actual, subjective awareness of the risk involved, i.e., an energized light pole, and that it did not proceed with conscious indifference to the rights, safety, or welfare of Anthony or others. After a hearing, the trial court granted K-Bar's motion disposing of all claims. The order of the trial court did not specify the basis for its ruling.[2] This appeal followed.

### ANALYSIS

### STANDARD OF REVIEW

We employ a *de novo* review of a trial court's ruling on a motion for summary judgment. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Where, as here, a party files both a no-evidence and traditional motion for summary judgment, the reviewing court must first consider the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 589, 600 (Tex. 2004).

In our review of a no-evidence summary judgment motion, we apply the same legal sufficiency standard of review we would apply following a conventional trial on the merits. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005). Rather than viewing evidence in the light most favorable to the verdict, we review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered and we disregard

---

[1] *See* TEX. R. CIV. P. 166a (traditional motion for summary judgment); TEX. R. CIV. P. 166a(i) (no-evidence motion for summary judgment).

[2] The order provides, "On this 13th day of September, 2018, the Court reviewed Defendant's Motion for Summary Judgment and Reply and Plaintiff's Response, heard arguments of counsel. It appearing no fact question exists, the motion should be granted. It IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment is GRANTED."

all contrary evidence and inferences. *City of Keller*, 168 S.W.3d at 823. To prevail on a defensive no-evidence motion for summary judgment the movant must prove that there is no-evidence of at least one essential element of each of the plaintiff's causes of action. *Id.* If the party against whom the summary judgment was rendered brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment motion cannot properly be granted. *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.—San Antonio 2000, no pet.) (citations omitted).

Applying the traditional legal sufficiency standard of review, a no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 684 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *City of Keller*, 168 S.W.3d at 810; *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). When a movant files a proper no-evidence summary judgment motion, the burden shifts to the nonmovant to defeat the motion by presenting at least a scintilla of probative evidence raising a genuine issue of material fact as to each element challenged in the no-evidence motion. *Mack Trucks, Inc.*, 206 S.W.3d at 582.

Because the order granting summary judgment in this matter did not specify the grounds on which the trial court relied, we must affirm the judgment if any of the theories raised in K-Bar's motions for summary judgment are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993), *Reynosa*, 21 S.W.3d at 513 (citation omitted).

4

**APPLICABLE LAW**

As stated above, it is undisputed that K-Bar was, at all relevant times, a subscriber under the Texas Workers' Compensation Act. It is also undisputed that Anthony was an employee of K-Bar at the time of his death and that his death occurred in the course and scope of his employment. Consequently, the exclusive remedy provision contained in the Texas Labor Code applies to this suit. *See* TEX. LABOR CODE ANN. § 408.001(a) (West 2015).[3] Under that provision, in order to prevail in a wrongful death suit against an employer who subscribes to workers' compensation insurance, the legal representative of a deceased employee must prove the employer was grossly negligent in causing the employee's death. Accordingly, even if we were to assume that Anthony's death was caused by K-Bar's negligence, Appellants would still be entitled to a recovery only if they were able to establish grounds for the recovery of exemplary damages for gross negligence. TEX. CIV. PRAC. & REM. CODE ANN. § 41.003 (West 2015) (providing standards for recovery of exemplary damages).

---

[3] That provision provides as follows:

(a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

(b) This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.

(c) In this section, "gross negligence" has the meaning assigned by Section 41.001, Civil Practice and Remedies Code.

(d) A determination under Section 406.032, 409.002, or 409.004 that a work-related injury is noncompensable does not adversely affect the exclusive remedy provisions under Subsection (a).

The test for gross negligence contains two components, one objective and one subjective. *Lee Lewis Construction, Inc. v. Harrison,* 70 S.W.3d 778, 785 (Tex. 2001). Gross negligence is defined by statute as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.
>
> TEX. CIV. PRAC. & REM. CODE ANN. § 41.001 (West Supp. 2019).

Under this definition, the "actor" is the party to be held responsible—in this case, K-Bar. In evaluating the sufficiency of the evidence to establish gross negligence pursuant to this standard, circumstantial evidence is sufficient to prove either component. *Lee Lewis Construction,* 70 S.W.3d at 785 (citations omitted). Additionally, it is important to note that these requirements are not satisfied through proof of ordinary negligence or even bad faith. *Agrium U.S., Inc. v. Clark,* 179 S.W.3d 765, 767 (Tex. App.—Amarillo 2005, pet. denied).

### APPLICATION

### A.  NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

Considering K-Bar's no-evidence motion for summary judgment first, that motion alleged there was no evidence K-Bar acted with gross negligence towards Anthony. Therefore, by our review, we are required to determine whether Appellants produced at least a scintilla of probative evidence raising a genuine issue of material fact establishing that K-Bar's act or omission (1) objectively from the standpoint of K-Bar, at the time of its

occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) K-Bar had actual, subjective awareness of the risk involved (i.e., that the light pole was electrified or that someone loosening the bolts on the pole might be electrocuted) but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

In its motion, K-Bar asserted there was no evidence that it acted with gross negligence because: (1) from K-Bar's objective standpoint, the job of loosening the bolts did not involve an extreme degree of risk because no electrical work was being performed at the time; (2) it did not have actual, subjective awareness of the risk involved because it was unaware of any faulty wiring; and, (3) it did not proceed with conscious indifference to the rights, safety, or welfare of others because it believed it was proceeding as a reasonable and prudent electrical contractor would under the same or similar circumstances. In their response, Appellants contended they raised a genuine issue of material fact concerning K-Bar's gross negligence and in support of that contention they point to several depositions, OSHA standards, and the affidavit and report of their expert. Appellants contend K-Bar was grossly negligent by allowing its employees to work on light poles without following required OSHA standards and safety protocols, including de-energizing the light poles prior to beginning any work on them. Appellants also argue that while K-Bar claimed its employees were not performing electrical work that day, its on-site supervisor testified in his deposition that they brought the company crane to the site in the event it was "possible" to remove the light poles that day, an act that would be considered electrical work. The nature and scope of the work to be performed that day having been raised, Appellants contend the evidence was sufficient to create a genuine

issue of material fact as to K-Bar's gross negligence, thereby defeating its no-evidence motion for summary judgment.

Appellants note that Andy's deposition testimony established he was aware, prior to the accident, that electrical energy posed a high degree of risk of serious bodily injury or harm and he was aware of the importance of doing a hazard or safety assessment prior to beginning electrical work. They also pointed to his testimony that he made a conscious decision not to perform a hazard assessment the day of Anthony's death. They also focused on the testimony of the president of K-Bar, Donnie Barry, in which he testified Andy was responsible for determining whether the job could be performed safely and to ensure it was actually performed safely. Appellants relied too on the testimony of K-Bar's expert during which he said someone performing electrical work must be willing to anticipate defects and take the equipment as it is found at the time that they go to work on it.

Citing *U-Haul Int'l, Inc. v. Waldrip,* Appellants contend the Texas Supreme Court has found that subjective awareness of extreme risk does not require the defendant to know of a specific threat posed by a particular instrumentality in order to satisfy the subjective component of gross negligence. *See U-Haul Int'l, Inc. v. Waldrip,* 380 S.W.3d 118, 139 (Tex. 2012) (negligence and gross negligence claim based on allegation that the accident causing the plaintiff's injuries was the result of a systematic pattern of poor inspection and repair practices relating to a truck rented from defendants). They also argue that foreseeability does not require that an actor know of the specific and precise manner in which an injury will occur but only that the actor might reasonably anticipate the character of the injury. *Lee Lewis Construction,* 70 S.W.3d at 785. In *U-Haul Int'l,*

8

*Inc.*, the Supreme Court made clear that in order to recover exemplary damages for gross negligence, the plaintiff had to establish that the defendant had actual, subjective awareness of an extreme degree of risk, but nevertheless proceeded with indifference to the consequences of its acts. *U-Haul Int'l, Inc.*, 380 S.W.3d at 137.

Despite Appellants' arguments, we cannot say there is any evidence K-Bar had an actual awareness of a risk that the light pole was improperly electrified when it permitted Anthony to assist Andy in loosening the bolts that day. The record shows that the light pole on which Anthony was working that day was improperly energized due to initial improper installation and later improper modification and repair, none of which was performed by K-Bar, that allowed a live current to come in contact with the frame of the light pole itself. The evidence showed that when Anthony was electrocuted, he was assisting Andy in attempting to loosen a bolt. Nothing about what Andy or Anthony was doing indicated K-Bar was intending to remove the light poles at that time. For that matter, nothing they were doing was considered to be electrical work which would have required electrical standards and safety protocols to be followed. Andy's testimony that the employees might have removed the light poles that day if "possible" only indicates the possibility that, at some future time, K-Bar employees might have been doing electrical work requiring adherence to the standards and protocols cited by Appellants. Stating the obvious, Andy testified he would not have touched the light pole first if he thought there was any danger of his being electrocuted. Andy's testimony makes it clear. At the time of the accident, K-Bar was aware of the general inherent danger of working with electricity, but not aware of any electrical danger inherent in the performance of loosening bolts in preparation for the removal of light poles.

9

The testimony of Appellants' own expert also illustrates K-Bar's lack of actual subjective awareness of the state of the light pole in question. During the deposition of Appellants' expert, he was asked, "You don't know of any evidence that would show K-Bar management knew that the pole was energized before the accident, correct?" He answered, "The pole itself, no." Appellants' expert also said he did "not recall [any K-Bar employee] stating that they knew [the pole] was energized." And, the expert could not think of any other evidence that showed K-Bar actually knew the pole was energized. In fact, logical circumstantial evidence dictates that Sundown ISD would not have knowingly allowed an energized light pole to exist on one of its playgrounds or that K-Bar employees would have knowingly engaged an electrified metal pole and, therefore, it is highly probable that the pole was somehow energized during the process of loosening the frozen bolts. "[A] party cannot be liable for gross negligence when it actually and subjectively believes that circumstances pose no risk to the injured party, even if they are wrong." *U-Haul Int'l, Inc.*, 380 S.W.3d at 141. As such, none of the summary judgment evidence established K-Bar's subjective knowledge that the light pole in question was improperly energized or otherwise presented an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

Counsel for Appellants argued at oral submission that this case is similar to that presented in *Mason v. Amed-Health, Inc.*, 582 S.W.3d 773, 792 (Tex. App.—Houston [1st Dist.] 2019, pet. filed). The court concluded there was more than a scintilla of evidence that the appellee and doctor were aware of an extreme degree of risk of fire for a patient like the one at issue in that case. *Id.* The patient was a veteran who was taking several medications, including morphine and lorazepam. *Id.* at 776. He also was a smoker. *Id.* He was given oxygen and he was told it was very dangerous to smoke while using

10

oxygen. *Id.* at 777. Warnings of that risk were also placed on the wall, oxygen canisters, and the oxygen concentrator near the patient's bed. *Id.* The court based its finding that there was more than a scintilla of evidence showing awareness of the risk of fire based on testimony from a physician that oxygen-fed fires were a well-known risk and that the Veterans Administration had created guidelines to help medical providers and caregivers manage that risk. *Id.* The court also found there was more than a scintilla of evidence that the appellee and doctor were subjectively aware of the fire risk but nevertheless proceeded treating this particular patient without properly addressing that risk. *Id.* Also, one witness had testified that the risk of an oxygen fire was a "real possibility." *Id.* Another doctor testified he "had had at least one patient die under similar circumstances." *Id.* Another witness testified the treatment was improper under the circumstances and that there were alternative treatments that the appellee and doctor failed to consider. *Id.*

We do not find the facts in that case to have any similarity to the record before us. While there is evidence supporting K-Bar's knowledge of the general risk of electrocution inherent in working with electricity and the related standards and protocols to be utilized when performing electrical work, there is no evidence of a well-known risk of electrocution when loosening bolts on the base of a light pole or any evidence of K-Bar's subjective awareness of the risk of electrocution in performing that particular task. No one testified that any other employee had died under similar circumstances or that electrocution in these circumstances had ever occurred or was a "real possibility." Nor do we find any comparable testimony or evidence in the record before us that K-Bar consciously proceeded with its course of conduct notwithstanding a present appreciation of the risks. Consequently, we disagree with Appellants' assessment that the facts in *Mason* are analogous to those before us or that its precedent is applicable.

11

Because there is no evidence that K-Bar was subjectively aware of the danger, we find also there is no evidence that K-Bar "nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." As a result, we conclude that Appellants failed to raise a genuine issue of material fact as to an essential element of Appellants' cause of action—i.e., K-Bar's gross negligence. Consequently, the trial court did not err in granting K-Bar's no-evidence motion for summary judgment.

Because we have found the trial court did not err in granting K-Bar's no-evidence motion for summary judgment and because we must affirm the judgment if any of the theories raised in K-Bar's motion for summary judgment are meritorious, we pretermit consideration of Appellants' issue as to K-Bar's traditional motion for summary judgment. *See State Farm Fire & Cas. Co.*, 858 S.W.2d at 380. *See also* TEX. R. APP. P. 47.1. Appellants' single issue is overruled.

## CONCLUSION

We affirm the order of the trial court.

Patrick A. Pirtle
Justice