NO. 07-04-0222-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



NOVEMBER 18, 2005


______________________________



AGRIUM U.S., INC., 



 Appellant


v.



VERNA CLARK, 



 Appellee

_________________________________



FROM THE 84TH DISTRICT COURT OF HUTCHINSON COUNTY;



NO. 35,315; HON. WILLIAM D. SMITH, PRESIDING


_______________________________



Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL, JJ. (1)

 Agrium U.S., Inc. (Agrium) appeals from a judgment awarding exemplary damages
to appellee Verna Clark (Verna), the widow of Melvin Clark (Clark). Clark, an employee
of Agrium, died during the course of performing his duties. At the time, he was attempting
to replace a discharge valve located in a highly pressurized line. The line had not been
completely depressurized, however. And, as Clark removed a cover plate to access the
valve, the pressure in the line blew the plate from its seat and against Clark. He
subsequently died from the injuries he sustained. 

 Verna and Clark's surviving children sued Agrium, alleging that the gross negligence
of the company caused Clark's death. Upon trial, the jury found that the company had
indeed acted with gross negligence and awarded Verna $2,000,000. No exemplary
damages were awarded the children, however. Judgment awarding Verna $1,576,000
subsequently was entered by the trial court, and Agrium appealed. 

 Though three issues are before us, we need only address the first. It is dispositive. 
Through it, Agrium asserts that the jury's finding of gross negligence lacks the support of
clear and convincing evidence. We sustain the issue and reverse the judgment.

 Applicable Law 

 It is settled that one's gross negligence must be established by clear and convincing
evidence. Diamond Shamrock Refining Co. v. Hall, 168 S.W.3d 164, 170 (Tex. 2005); Tex.
Civ. Prac. & Rem. Code Ann. §41.003(b) (Vernon Supp. 2005). Whether this burden has
been met depends upon whether the quantum of evidence offered at trial is enough to
permit a reasonable jury to form a firm conviction or belief that its finding is true. Id.,
quoting In re J.F.C., 96 S.W.3d 256 (Tex. 2002). Furthermore, when applying the test, the
reviewing court must interpret all the evidence of record in a light most favorable to the
verdict. Id. So too must it 1) assume that the factfinder resolved disputed facts in favor
of its finding if a reasonable factfinder could do so and 2) disregard all evidence that a
reasonable factfinder could have disbelieved or found incredible. Id. Yet, undisputed facts
contradicting the verdict need not be disregarded for that "'could skew the analysis . . . .'" 
Id. And, only if upon considering all the evidence in the manner described, the reviewing
court decides that no reasonable jury could form the requisite belief or conviction may it
then hold the evidence legally insufficient. Id.

 Next, gross negligence consists of objective and subjective elements. It is the latter
which we address here. According to our Supreme Court and statute, the actor must have
a subjective awareness of the risk involved and proceed with conscious indifference to the
rights, safety, or welfare of others. Id.; accord, Tex. Civ. Prac. & Rem. Code Ann.
§41.001(11) (Vernon Supp. 2005) (defining gross neglect as an act or omission which,
when viewed objectively from the standpoint of the actor at the time of its occurrence,
involved an extreme degree of risk, considering the probability and magnitude of the
potential harm to others, and of which risk the actor had actual subjective awareness but
nevertheless proceeded with conscious indifference to the rights, safety, or welfare of
others). This standard is not met through proof of negligence. Tex. Civ. Prac. & Rem.
Code Ann. § 41.003(b) (Vernon Supp. 2005); Lee Lewis Constr. Co. v. Harrison, 70
S.W.3d 778, 785 (Tex. 2001). Indeed, what separates ordinary negligence from gross
negligence is the actor's state of mind. Diamond Shamrock Refining Co. v. Hall, 168
S.W.3d at 173, quoting Louisiana-Pacific Corp v. Andrade, 19 S.W.3d 245 (Tex. 1999). 
That is, not only must the actor have actually known of the peril but also his acts or
omissions must demonstrate subjectively "'that he did not care'" about it. Id.; Lee Lewis
Constr. Co. v. Harrison, 70 S.W.3d at 785; General Motors Corp. v. Sanchez, 997 S.W.2d
584, 596 (Tex. 1999). We must caution, however, that an actor's failure to pursue the
safest course available or provide the best warnings imaginable does not necessarily
equate to a want of caring. General Motors Corp. v. Sanchez, 997 S.W.2d at 597-98. Nor
does the violation of a law or regulation inescapably evince conscious indifference. See
Williams v. Steve Indus., Inc., 699 S.W.2d 570, 574 (Tex. 1985) (finding that the driver's
lack of a commercial driver's license did not establish gross negligence without proof that
the driver had any prior speeding tickets, had caused or been involved in prior accidents,
lacked experience driving big trucks, or was an incompetent or reckless driver or proof that
his employer actually knew the driver operated the truck in a dangerous way). 

 And, while the existence or non-existence of safety or corporate policies touching
upon the work being done may provide some basis for a gross negligence finding,
Louisiana-Pacific Corp. v. Andrade, 19 S.W.3d at 247-48, that is not always true. Indeed,
the absence of written policies 1) describing how to "lock-out or tag-out" electrical
equipment or 2) warning others of potential safety risks did not support such a finding in
Louisiana-Pacific Corp. This was so because those involved had thought that the
particular equipment had been locked-out. Id. at 248. 

 Nor does the lack of redundant safety measures ipso facto establish gross
negligence. The Supreme Court said as much in Diamond Shamrock. Diamond Shamrock
Refining Co. v. Hall, 168 S.W.3d at 172 (stating that Diamond Shamrock's failure to
implement redundant safety systems is not evidence of conscious indifference to the risk
of explosion since the valve it utilized "appeared to have protected against the risk for
fifteen years"). 

 Simply put, the circumstances of each case must stand on their own. That particular
acts or omissions may evince gross negligence in some situations does not mean that they
do in all situations. Rather, all the circumstances are pivotal, and unless they permit a
reasonable jury to develop a firm conviction or belief that the defendant "did not care"
about the risk, there can be no gross negligence.

 Application of Law

 Verna attempted to establish gross negligence at bar through a plethora of
evidence. That latter consisted of testimony and documentation regarding the manner in
which employees were to safely change the defective valve or other mechanisms in
pressurized lines. Moreover, that evidence involved instances of Agrium's 1) non-compliance with regulations issued by the Occupational Safety and Health Administration
addressing the subject, 2) failure to install additional or inspect existing redundant safety
systems, 3) lack of pertinent policies assuring that pressure values were opened and
locked-out to prevent their closure while repairs were undertaken, 4) de minimus formal
training on how to repair the discharge valve or remove the cover plate, and 5) failure to
affix warning labels on the compressor as recommended by its manufacturer. 

 Yet, it is undisputed that Agrium had a general policy regarding the way its
employees were to repair defective mechanisms within pressurized lines. Furthermore,
the policy mandated that "all energy [be] released/de-pressured." This procedure was both
used in the past and shown to be effective when fully implemented. Indeed, even Verna's
own expert conceded that Clark would not have been injured in the way he was had the
pressure in the line been released before Clark attempted to remove the cover plate. 

 The company also had a policy obligating its workers to obtain a "safety work permit"
before undertaking repairs like those attempted by Clark. An aspect of that permitting
system required that "[a]ll energy sources [be] isolated (locked and tagged)" and that "[a]ll
energy [be] released/de-pressured." And, while evidence indicated that employees
sometimes undertook repairs without first obtaining the requisite permit, Verna does not
argue that Agrium knew of or condoned the practice. Nor does she argue that the practice
related to the repair of the valve which Clark sought to fix. 

 Other undisputed evidence illustrates that 1) Clark and his co-workers met to
discuss the manner in which to complete the necessary repairs, 2) the vent valves
necessary to release pressure from the line were opened, 3) one of the vents, however,
was not fully opened, 4) it was believed that all the pressure had been released from the
line, 5) at least one gauge was present in the control room to illustrate whether pressure
remained in the line, 6) the gauge was operable at the time, (2) 7) Clark attempted to remove
the cover plate without first obtaining the requisite safety work permit, and 8) when asked
by his colleague whether they should obtain the permit before continuing, Clark uttered an
expletive indicating that he did not wish to wait. 

 It is beyond doubt that other measures could have been taken by all involved to
prevent the incident or reduce the risk involved. But what cannot be ignored is the fact that
Agrium had in place procedures which obviated the danger inherent in working on
pressurized lines. And, we find no evidence of record suggesting that had those
procedures been completely followed, the incident would have nonetheless occurred. Nor
did we find evidence that like incidents had occurred in the past despite full compliance
with the procedures. 

 The circumstances before us are quite akin to those in Diamond Shamrock. Though
other actions could have been taken to prevent the incident in Diamond Shamrock, the
check valve that had been installed protected against the risk there involved for some 15
years. Diamond Shamrock Refining Co. v. Hall, 168 S.W.3d at 172. Since the valve
existed and was historically effective, Diamond Shamrock's failure to install redundant
safety measures fell short of illustrating that the company intentionally did nothing to
protect Hall from the risk of explosion, according to the Supreme Court. Id. The same is
no less true at bar. (3) 

 Agrium mandated a procedure for avoiding the risk of injury when working on
pressurized lines. That procedure had been effective over the years. And, had it been
followed and the line been fully depressurized, Clark would have not been injured by an
exploding cover plate, according to experts. Again, the release of "all energy" (or pressure)
before work began was what Agrium's procedure required. (Emphasis added). Moreover,
an operating gauge was present to determine if all pressure had been released. So too
did those attempting to release the pressure subjectively believe that they had performed
the task. See Louisiana-Pacific Corp. v. Andrade, 19 S.W.3d at 248 (holding that the lack
of corporate policies touching upon the lock-out of a crane did not establish gross
negligence since the employees subjectively believed that the crane had been locked-out). 
Given this evidence and Supreme Court precedent, we cannot but conclude that the record
before us falls short of allowing a reasonable jury to form a firm conviction or belief that
Agrium did not care about the risk of injury posed to Clark. Thus, the finding of gross
negligence at bar lacks the support of legally sufficient evidence. 

 Having sustained Agrium's first issue, we reverse the judgment of the trial court and
render judgment denying Verna recovery against Agrium. 


 Brian Quinn 

 Chief Justice

 

 
1. Ex-chief Justice Philip Johnson did not participate in rendering this opinion though he sat on the
panel at oral submission.
2. Indeed, after the cover plate blew off its seat, an Agrium employee looked at the pressure gauge and
saw indication that the line remained pressurized but was rapidly losing pressure. 
3. That safety measures were available but not utilized due to the conscious decisions of those in
charge differentiates from the situations in Lee Lewis Constr. Co. v. Harrison, 70 S.W.3d 778, 786 (Tex. 2001)
and Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 925 (Tex. 1998) from that here.