Opinion issued November 25, 2014



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-01088-CV

————————————

## MARIA GARAY AND A.O., Appellants

## V.

## G. R. BIRDWELL CONSTRUCTION, L.P., Appellee

On Appeal from the 113th District Court
Harris County, Texas
Trial Court Case No. 2013-07234

## MEMORANDUM OPINION

Maria Garay ("Garay"), the surviving spouse of the decedent, Paulino Garay ("Paulino"), and A.O., on behalf of Paulino's minor child, sued Paulino's employer, G. R. Birdwell Construction, L.P. ("Birdwell"), for wrongful death

arising out of a fatal accident that occurred while Paulino operated a trench roller at a construction site. The trial court granted Birdwell's no-evidence summary judgment motion on Garay's and A.O.'s gross negligence claims. In three issues, Garay and A.O. contend that the trial court erred in (1) sustaining Birdwell's hearsay objection to witness statements contained in a police report because the statements constituted admissions by a party opponent; (2) granting Birdwell's no-evidence summary judgment motion because Garay raised fact issues on both elements of her gross negligence claim; and (3) granting summary judgment with respect to A.O. despite her counsel's failure to file a summary judgment response due to equitable considerations.

We affirm the judgment of the trial court.

## Background

On September 21, 2012, Birdwell completed construction of an L-shaped concrete wall at a construction site near the Houston Ship Channel. Paulino operated a Dynapac LP8500 trench compactor for Birdwell.[1] Paulino had worked for Birdwell for five years operating the trench roller without any incidents. Generally, workers use a remote control to operate the trench roller; however, according to Cosme Fuentes, another Birdwell employee, Paulino claimed the

---

[1] The parties refer to this piece of machinery in the trial court proceedings and in their briefs on appeals as a "trench roller." We therefore do likewise. A trench roller is a machine that packs soil and is used to compact backfill for trenches.

remote control was not working even though he had used it earlier the same day. As a result, Paulino decided to manually operate the trench roller. At least one other Birdwell employee had operated the trench roller in the same manner on previous occasions.

At some point while maneuvering the trench roller, Paulino stood at a "pinch point" between the trench roller and the concrete wall.[2] The trench roller subsequently pinned Paulino to the concrete wall. His co-workers attempted to move the trench roller, but Paulino had already sustained massive internal injuries and died at the scene.

In her original petition, Garay sued Birdwell, a worker's compensation insurance subscriber, for gross negligence. She contended that three essential safety features of the trench roller failed on the date of the incident—the remote control, the rear "push-stop" bar, and the emergency stop button. Garay alleged that Birdwell "knew that [the trench roller] was not safe to operate but failed to make the proper repairs or replacement and required Paulino Garay to continue

---

[2] According to the Occupational Safety & Health Administration ("OSHA"), a pinch point is "any point other than the point of operation at which it is possible for a part of the body to be caught . . . between moving and stationary parts of a press or auxiliary equipment or between the material and moving part or parts of the press or auxiliary equipment." 29 C.F.R. § 1910.211(d)(44) (2011).

3

operating the unsafe equipment," ultimately causing his death. Several months later, A.O. intervened in the lawsuit with allegations identical to Garay's.[3]

Birdwell moved for no-evidence summary judgment on both Garay and A.O's gross negligence claims. Birdwell contended it was entitled to summary judgment as a matter of law because no evidence existed to show that (1) "Birdwell's conduct created an extreme degree of risk that Paulino Garay would sustain serious injury"; (2) "Birdwell was actually aware of an extreme danger of serious injury to Paulino Garay, yet acted with conscious indifference to Garay's rights, safety, or welfare"; or (3) "any Birdwell vice principal committed or ratified gross negligence." Birdwell maintained that neither Garay nor A.O. could "demonstrate that there is a scintilla of probative evidence to support the required elements of their gross negligence claims."

In its summary judgment motion, Birdwell contended that Garay and A.O. could not establish that, without hindsight, Birdwell's actions or omissions created an "extreme degree of risk" or the likelihood of serious injury to Paulino. Specifically, Birdwell argued that "[Paulino] was doing the same type of work and using the same piece of equipment that he had used regularly in the five years that he had worked for Birdwell" and that Paulino was responsible for checking his equipment and reporting any problems with the equipment before beginning work

---

[3] A.O. is the mother of O.O., Paulino's biological minor child. O.O. is not related to Maria Garay.

4

each day. Additionally, Birdwell presented evidence that it had warned its employees never to stand between equipment and a fixed object such as a wall. Birdwell further argued that summary judgment was proper because Garay and A.O. could not establish that Birdwell "actually kn[e]w of an extreme danger to [Paulino]" or that it acted with conscious indifference to Paulino's safety and welfare. Specifically, Birdwell argued that Garay and A.O. could present no evidence that "any problem with the operation of the [trench roller] was brought to the attention of any Birdwell manager in the days preceding the accident." Birdwell also argued that the "only danger" on the day of the incident was Paulino's "unexpected and unforeseen action in ignoring Birdwell's safety rules and putting himself into a pinch point between the [trench roller] and the wall."

Birdwell further asserted that Garay and A.O. did not identify a Birdwell vice principal who potentially committed gross negligence resulting in Paulino's death. With its no-evidence motion, Birdwell submitted portions of the depositions of Cosme Fuentes, Ramon Jaramillo, a Birdwell foreman, David Frias, Birdwell's superintendent, Jerry Travelstead, Birdwell's corporate health and safety manager, Daniel Monajares, a shop and field mechanic for Birdwell, and Jose Monajares, a Birdwell foreman.

According to his testimony, Jaramillo had seen Paulino using the remote control to operate the trench roller on the morning of the incident, but in the

5

afternoon, he saw Paulino operating the trench roller manually. Jaramillo stated, "[W]e know that it's dangerous to get on the back of the machine." Jaramillo testified that he did not attend a meeting in which Birdwell safety personnel discussed a safe way to operate the trench roller that Paulino usually used. However, Jaramillo also testified that Birdwell conducted a daily safety meeting each morning and that Birdwell provided "safety data sheets" to its employees. During the morning safety meetings, Birdwell told equipment operators to inspect their equipment and report any issues. Birdwell also held a safety meeting regarding a larger trench roller than the one Paulino usually operated.

The topics for the "safety data sheets" changed weekly. Birdwell attached examples of the safety data sheets as summary judgment evidence. The "Weekly Safety Meeting" sheets reminded employees to fill out a "Daily Equipment Inspection Form" prior to using the equipment each day. Additionally, one of the weekly safety sheets, entitled "A Rock and a Hard Place" warned employees to be cautious around equipment. This document stated, "Never stand between a piece of equipment or a load and a fixed object like a wall, pillar, vehicle, or another load," and, "Make sure that you look for and avoid pinch points."

In his deposition, Cosme Fuentes testified that Paulino showed him how to operate the trench roller. On the day of the incident, Fuentes warned Paulino not to place himself between the concrete wall and the trench roller. However, Paulino

6

rebuffed the warning and told Fuentes, "[H]ey, man, you know, you're not safety anymore." Fuentes stated,

> He was like, man, imagine if it would crush me, and I was like, that's what I told you, turn the machine around. So when he went to go do it again, he came back and he put his hand out to the side and he controlled it like that. I was like, see, that's better, you know.

Fuentes then turned away, but when he turned back to Paulino shortly thereafter, he saw Paulino pinned against the wall by the trench roller. Fuentes attempted to move the trench roller away from the wall, but Paulino's body covered its buttons, including an emergency stop button. After realizing he needed help, Fuentes yelled for Frias and Jaramillo. Jaramillo and Frias hooked a chain to the trench roller to pull it away from the concrete wall with a bulldozer.

David Frias testified that Paulino had worked for Birdwell for five years and that he had initially trained Paulino on the trench roller, which he described as an "entry level" machine. Frias did not give Paulino a formal training course on the trench roller; instead, the training primarily consisted of Frias telling Paulino, "Get your remote control, get it started, and stay away from it you know, running." Frias testified that he was not aware of any problems with the trench roller on the day of the incident. He stated that it is the operator's responsibility to inspect his equipment each day and let the shop know if equipment needs repair.

Daniel Monajares testified that equipment would come into Birdwell's repair shop after a job finished so the mechanics could inspect it and "make sure

7

everything is good for the next job." The mechanics would fix any problems before sending the equipment to the next job. He testified that if a piece of equipment breaks while on a job, the operator is supposed to tell his supervisor, who then calls the shop foreman.

Birdwell introduced portions of Jerry Travelstead's testimony to demonstrate that the remote control was not malfunctioning and that there had been no problems with the trench roller while Paulino had been operating it on the date of the incident. Additionally, Travelstead testified that a representative from Dynapac inspected the trench roller and conducted a separate report. In his deposition, Travelstead conceded that Birdwell did not have a formal safety policy with regard to equipment repair. Travelstead also testified that Birdwell foremen generally let him know if equipment had a problem and that, if he discovered malfunctioning equipment while walking around a jobsite, he would "have them stop and have it repaired." Travelstead stated, "The only thing that I know of [is] that all safety devices that are on the equipment needs to be working if it's identified as a safety piece of equipment, safety device."

Garay responded to Birdwell's summary judgment motion, asserting that fact issues existed on each element of her gross negligence claim.[4] Garay argued that Birdwell knew that the trench roller "was not safe to operate but failed to make

---

[4] A.O., who had retained separate counsel from Garay, did not respond to Birdwell's summary judgment motion.

8

the proper repairs or replacement[s] and acted with conscious indifference to Paulino Garay's rights, safety, and welfare by requiring him to continue operating the unsafe equipment." Garay also asserted that not only was Birdwell "aware that the operation of the equipment without proper training was extremely dangerous and could cause serious injury," but Birdwell consciously disregarded this risk by requiring Paulino to operate the trench roller without any training and failing to warn him of any danger. She argued that Birdwell was aware "of previous problems with the remote and with other mechanical problems of the trench roller." Garay argued that if Birdwell had checked the trench roller's safety devices, it would have "discovered that the safety shut off switch did not work and that the safety shut off bar was completely missing from the machine."

As summary judgment evidence, Garay introduced a post-incident inspection report concerning the trench roller prepared by a Dynapac representative and an OSHA citation that contained excerpts of the Dynapac report. The Dynapac report identified that the push-stop bar ("safety bar") was missing from the trench roller and explained that when the safety bar hits an object, it causes the trench roller to stop. The report also noted that the inner tube of the safety bar was bent, there was a problem with fuel shut off solenoid and linkage, the safety manual was missing from its storage compartment, and the engine

start/stop switch was broken.[5]  In the OSHA citation, the investigator noted that not only was the trench roller missing safety and mechanical components, including the safety bar, but also the machine had serious defects, and Birdwell should have taken the trench roller out of service.

The OSHA citation listed two regulatory violations:  (1) "[E]mployees were exposed to a caught in-between hazard when manually operating the [trench roller] while backfilling dirt in close proximity of a concrete wall without functioning safety and mechanical devices"; and (2) "The employer does not ensure safety and mechanical devices are functioning. . . . [E]mployees were exposed to a caught in-between hazard . . . without ensuring that the machinery was functioning properly."  Birdwell did not share this OSHA report with its employees.  Garay also argued that Birdwell's failure to post the OSHA report and citation where its employees could see it constituted conscious indifference to the safety of its employees.

In addition to the OSHA inspection, a deputy from the Harris County Sheriff's Department investigated the scene and took several witness statements regarding the accident.  Garay attached the sheriff's incident report, which

---

[5]  "The function of the fuel shut off solenoid[] is to shut off the engine when either the emergency stop, or the stop switch are being activated.  When power to the solenoid is cut off, it pushes the rod, which makes the fuel shut off lever rotate, and mechanically shut[s] off fuel supply to stop the engine.  In order for this to happen, the rod must be connected both to the solenoid, and the shut off lever."

contained an "investigative narrative" describing the deputy's conversations with eyewitnesses, as summary judgment evidence.

Garay also attached highlighted excerpts from the depositions of Travelstead, Fuentes, Daniel Monajares, Jaramillo, and Frias to raise fact issues concerning Birdwell's safety procedures. Garay used statements from the depositions to emphasize that Birdwell failed to provide any training for the trench roller and that Birdwell did not inform employees of the OSHA citation as was required. Additionally, Garay emphasized that the trench roller had had previous problems, including problems with the remote control, and that Birdwell failed to make proper repairs.

Garay submitted the admissions of Travelstead, Fuentes, Daniel Monajares, and Jose Monajares that they were not aware that Birdwell had held any specific meetings or programs regarding safe operation of the trench roller. Travelstead revealed that he realized the push-stop bar had been removed from the trench roller when he conducted the report and reviewed the Dynapac safety manuals. However, Travelstead also testified that Birdwell was not initially aware of the push-stop bar because it was not identified as a safety device in the manual for the trench roller. The evidence submitted by Garay also included multiple witness accounts that the emergency stop button failed and then broke off when the workers tried to save Paulino.

11

In reply, Birdwell contended that Garay failed to raise an issue of material fact regarding the elements of gross negligence. Birdwell also objected to the witness statements found in the sheriff's incident report, to the Dynapac post-incident inspection report, and to the OSHA citation issued to Birdwell including excerpts from the investigator's report. Specifically, Birdwell objected to the following passage from the sheriff's report on the basis of hearsay:

> I spoke with Cosme Fuentes who advised that he had just talked to Mr. Garay and was walking away from the area[.] Mr[.] Fuentes advised that he turned around and saw that Mr[.] Garay was trapped between the Dynapac and the concrete wall[.] Mr[.] Fuentes advised that he started yelling for help and several co-workers arrived on scene to help[.]

> I then spoke with several co-workers and they advised that they all ran over to help at the same time and when the[y] arrived the Dynapac was still running and had Mr[.] Garay trapped against the wall[.] The co-workers advised that they pushed the emergency stop on the Dynapac but the emergency stop failed and the machine kept running[.] I was further advised that the co-workers pulled the fuel lines from the machine to stop the engine[.] Once the engine was stopped, they pulled the machine off of Mr[.] Garay by hooking a chain to the Dynapac and then to a bulldozer and pulled the Dynapac off of Mr[.] Garay with the bulldozer.

Birdwell argued that the OSHA citation and the Dynapac report also constituted inadmissible hearsay that does not fall within any exceptions to the hearsay rule.

Birdwell also attached additional deposition excerpts as summary judgment evidence. Daniel Monajares testified that the trench roller operated by Paulino had gone to the shop for minor repairs on several occasions in the two years preceding

12

the incident, such as for a problem with the hydraulic vent, a problem with the muffler, a compaction problem, an electric short, an issue regarding the remote control, and several other problems. Birdwell's repair shop had addressed all of the prior problems. Jose Monajares testified that he had witnessed the remote control malfunction before, but only when the operator stood too close to the trench roller itself.

Birdwell also attached additional excerpts from Travelstead's deposition. He testified that the purpose of the push-stop bar was to protect the back of the trench roller, that the bar had never been present on the trench roller at all during the five years Paulino had operated the trench roller, and that, at the time of the incident, he was unaware that the absence of the push-stop bar constituted something "wrong with" the trench roller. Travelstead testified that the trench roller had, at one point, been repaired by a company authorized by Dynapac, and that company did not identify the push-stop bar as a necessary safety device.

The trial court held a hearing on Birdwell's summary judgment motion. Despite receiving notice, A.O.'s attorney did not appear at this hearing. During the hearing, Birdwell orally objected to the witness statements contained within the sheriff's incident report on the basis of hearsay. Garay's counsel argued that the statements were made by Birdwell employees and thus constituted admissions by a party opponent. Birdwell also orally objected to the post-incident Dynapac report

because it was "not in any kind of admissible form" and was "basically just inadmissible hearsay." Birdwell also objected to the OSHA citation and investigative report on the grounds that they had not been proven up as business records, that they were not relevant to the gross negligence claim, that they were meant to be evidence only of the standards in the industry, and that they were "not in properly admissible form."

In a written order following the hearing, the trial court sustained Birdwell's objections to the sheriff department's incident report but did not rule on Birdwell's objections to the OSHA citation and the Dynapac report. The trial court later clarified that it overruled Birdwell's other objections to Garay's summary judgment evidence. The trial court granted Birdwell's no-evidence summary judgment motion against both Garay's and A.O.'s gross negligence claims. A.O. did not file a motion for new trial seeking to set aside the summary judgment rendered against her.

Garay and A.O. subsequently appealed.

## Exclusion of Evidence

In their first issue, Garay and A.O. contend that the trial court erred in excluding certain portions of the sheriff's incident report containing witness statements as inadmissible hearsay. Garay and A.O. argue that the complained-of

statements were to a sheriff's department deputy made by Birdwell's own employees and thus constitute admissions by a party opponent.

We review a trial court's ruling sustaining objections to summary judgment evidence for an abuse of discretion. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 824 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Finger v. Ray*, 326 S.W.3d 285, 290 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A trial court abuses its discretion when it rules "without regard for any guiding rules or principles." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (quoting *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)). To reverse a judgment based on the erroneous exclusion of evidence, an appellant must demonstrate that the exclusion probably resulted in an improper judgment. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *see also* TEX. R. APP. P. 44.1(a)(1) (providing that error is reversible if it "probably caused the rendition of an improper judgment"). A successful challenge to the trial court's evidentiary rulings generally requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded. *Interstate Northborough P'ship*, 66 S.W.3d at 220 (citing *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)). Ordinarily, we will not reverse a judgment due to the erroneous exclusion of evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *Id.*

15

Here, Garay attached the sheriff's incident report as summary judgment evidence. Birdwell objected to the following portion of the report:

> I spoke with Cosme Fuentes who advised that he had just talked to Mr. Garay and was walking away from the area[.] Mr[.] Fuentes advised that he turned around and saw that Mr[.] Garay was trapped between the Dynapac and the concrete wall[.] Mr[.] Fuentes advised that he started yelling for help and several co-workers arrived on scene to help[.]

> I then spoke with several co-workers and they advised that they all ran over to help at the same time and when the[y] arrived the Dynapac was still running and had Mr[.] Garay trapped against the wall[.] The co-workers advised that they pushed the emergency stop on the Dynapac but the emergency stop failed and the machine kept running[.] I was further advised that the co-workers pulled the fuel lines from the machine to stop the engine[.] Once the engine was stopped, they pulled the machine off of Mr[.] Garay by hooking a chain to the Dynapac and then to a bulldozer and pulled the Dynapac off of Mr[.] Garay with the bulldozer.

Birdwell argued that this portion of the report was hearsay and, thus, was inadmissible. Garay argued that the complained-of statements, which were made by Birdwell employees, constitute admissions by a party opponent, and thus the trial court should not exclude the statements under the hearsay rule. The trial court agreed with Birdwell and sustained the objection.

Assuming, without deciding, that the excluded evidence constitutes admissions by a party opponent, Garay and A.O. have not established that the trial court's exclusion of these statements is reversible error. Specifically, Garay and

A.O. have not demonstrated that the judgment turns on the particular statements or that the excluded evidence is not cumulative and is controlling on a material issue dispositive to the case. *See id.*

The statements contained in the sheriff's incident report are similar to statements made by the employees in the deposition testimony presented by Birdwell and Garay as summary judgment evidence. For example, in his deposition, Cosme Fuentes stated that he spoke with Paulino just before the incident, that he turned away, that when he turned back to Paulino, the trench roller was crushing Paulino against the wall, that he yelled for help, and that Frias and Jaramillo arrived at the scene to help free Paulino. Fuentes and Jaramillo both testified that they tried to stop the trench roller by pushing the emergency-stop button, which broke, and that they eventually pulled the trench roller away from Paulino with a bulldozer. Jaramillo also testified that the workers pulled various parts off the trench roller in an effort to turn it off.

Thus, all of the complained-of statements in the incident report could be found elsewhere in the summary judgment record. Because the excluded information is present elsewhere in the summary judgment record, the complained-of statements are cumulative of other summary judgment evidence. *See id.* We therefore hold that the trial court's exclusion of the witness statements contained in the sheriff's incident report does not constitute reversible error. *See id.* (requiring

17

appellant to demonstrate that judgment turns on particular evidence excluded to obtain reversal due to erroneous exclusion of evidence); *Chandler*, 376 S.W.3d at 824 (holding that exclusion of evidence generally does not constitute reversible error when excluded evidence is cumulative and not controlling on material issue dispositive to case).

We overrule Garay and A.O.'s first issue.[6]

## No-Evidence Summary Judgment on Gross Negligence Claims

In their second issue, Garay and A.O. contend that the trial court erred in rendering no-evidence summary judgment in favor of Birdwell on their gross negligence claims because they presented evidence raising a fact issue on each essential element of their claims.

### A. *Standard of Review*

We review a trial court's ruling granting a no-evidence summary judgment motion de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The trial court must grant a no-evidence motion for summary judgment if, after an adequate time for discovery has passed, the moving party asserts that there is no evidence of one or more specified elements of a claim or a defense on which the adverse party would have the burden of proof at trial and the respondent

---

[6] We also note that, in their reply brief, Garay and A.O. concede that the exclusion of the witness statements contained in the sheriff's incident report is not dispositive of the case. Garay and A.O. state, "[T]here is more than sufficient evidence of each element of gross negligence elsewhere in the record . . . ."

18

produces no summary judgment evidence raising a genuine issue of material fact on those elements. TEX. R. CIV. P. 166(a)(i); *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006).

When the movant files a proper no-evidence motion, the burden shifts to the nonmovant to defeat the motion by presenting evidence that raises a fact issue on each element challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). We review the evidence presented in the summary judgment record in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). The evidence produced must amount to more than a scintilla in order to raise a fact issue. *Madison v. Williamson*, 241 S.W.3d 145, 151 (Tex.App.—Houston [1st Dist.] 2007, pet. denied). Evidence amounts to more than a scintilla if it enables reasonable and fair-minded people to differ in the conclusions to be drawn from it. *See id.* at 151–52. Evidence does not amount to more than a scintilla if it gives rise only to surmise or suspicion about the fact to be proven. *See id.* at 152.

When, as here, a trial court does not specify the grounds on which it granted summary judgment, the appealing party must demonstrate that none of the proposed grounds is sufficient to support the judgment. *See Provident Life &*

*Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). Conversely, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

### B. Gross Negligence

To prevail in a wrongful death suit against an employer that subscribes to workers' compensation insurance, Garay and A.O. must prove that Birdwell was grossly negligent in causing Paulino's death.[7]  *See* TEX. LABOR CODE ANN. § 408.001(a)–(b) (Vernon 2006) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer . . . for the death of . . . the employee. . . . This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by . . . the employer's gross negligence."); *Davis v. Sinclair Ref. Co.*, 704 S.W.2d 413, 415 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) ("Thus a subscribing employer is exempt from common law liability for injuries arising from the course of employment except for certain exemplary damages in death cases specifically provided for by the [Worker's Compensation] Act."). Thus, if Garay and A.O can demonstrate that Birdwell's gross negligence

---

[7]  It is undisputed that Birdwell subscribes to workers' compensation insurance.

20

proximately caused Paulino's death, then they are entitled to exemplary damages in addition to workers' compensation benefits. *See Ardoin v. Anheuser-Busch, Inc.*, 267 S.W.3d 498, 502 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

Gross negligence is statutorily defined as an act or omission:

(1) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(2) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (Vernon 2008); *see also* TEX. LABOR CODE ANN. § 408.001(c) ("In this section, 'gross negligence' has the meaning assigned by Section 41.001, Civil Practice and Remedies Code."); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998). Unlike ordinary negligence, gross negligence contains "both an objective and a subjective component." *Reeder v. Wood Cnty. Energy, LLC*, 395 S.W.3d 789, 796 (Tex. 2012) (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21–22 (Tex. 1994)). Under the objective component of gross negligence, "'extreme risk' is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Ellender*, 968 S.W.2d at 921. Under

21

the subjective component, "actual awareness means that the defendant knew about the peril, but its act or omissions demonstrated that it did not care." *Id.*

A plaintiff may prove the elements of gross negligence through circumstantial evidence. *Id.* However, the legislature raised the standard of proof to "clear and convincing" in order to establish the elements of gross negligence. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012). Even though ordinary negligence is a pre-requisite to establish gross negligence, evidence of ordinary negligence is not sufficient to prove gross negligence. *See id.*; *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Conduct that is "merely thoughtless, careless, or not inordinately risky" is not grossly negligent. *Ardoin*, 267 S.W.3d at 503 (quoting *Moriel*, 879 S.W.2d at 22). The integral difference between ordinary negligence and gross negligence is the subjective component of the defendant's state of mind. *La.-Pac. Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex. 1999). "[A] party cannot be liable for gross negligence when it actually and subjectively believes that circumstances pose no risk to the injured party, even if they are wrong." *Waldrip*, 380 S.W.3d at 141 (citing *Andrade*, 19 S.W.3d at 248).

We must examine all of the events and circumstances from the defendant's perspective at the time the events occurred, without taking hindsight into consideration. *Reeder*, 395 S.W.3d at 796; *Ellender*, 968 S.W.2d at 922. Even if a

corporate defendant did not commit gross negligence itself, it may still be "liable if it commits gross negligence through the actions or inactions of a vice principal" by authorizing or ratifying the vice principal's gross negligence. *Ellender*, 968 S.W.2d at 921–22. The Texas Supreme Court has defined "vice principal" as one who represents a business in a corporate capacity and "the title of the employee is not dispositive." *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). Specifically, "vice principals" can be: "(a) [c]orporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of nondelegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business." *Id.*; *Ellender*, 968 S.W.2d at 922.

Garay and A.O. contend that the trial court erred in rendering summary judgment in favor of Birdwell because specific acts and omissions by Birdwell constituted gross negligence. Garay and A.O. argue that Birdwell had a nondelegable duty to provide a safe workplace, safe equipment, and adequate training to its employees, but Birdwell breached this duty. An employer has a "duty to use ordinary care in providing a safe workplace." *LMC Complete Auto., Inc., v. Burke*, 229 S.W.3d 469, 476 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also* TEX. LAB. CODE ANN. § 411.103(1), (3) (Vernon 2006) (providing that each employer shall "provide and maintain employment and a place

23

of employment that is reasonably safe and healthful for employees" and "take all other actions reasonably necessary to make the employment and place of employment safe"). This duty requires employers to furnish safe machinery and instrumentalities with which its employees are to work, provide adequate assistance under the circumstances for the performance of required work, instruct employees in the safe use and handling of equipment used in and around the employer's facilities, and adequately hire, train, and supervise employees. *LMC Complete Automotive*, 229 S.W.3d at 476.

An employer is not, however, an insurer of its employees' safety. *Id.* (citing *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam)). An employer does not owe a duty to warn of hazards that are commonly known or appreciated by the employee, and the employer has no duty to provide assistance if the injury results from performing the same character of work that employees in that position have always done and there is no evidence that the work is unusually precarious. *Id.* (citing *Elwood*, 197 S.W.3d at 794–95).

Garay and A.O. focus on five particular acts or omissions in arguing that Birdwell's conduct constitutes gross negligence: (1) Birdwell's failure to train Paulino on the specific trench roller involved in the incident; (2) the trench roller's malfunctioning remote control; (3) the trench roller's missing safety bar; (4) the trench roller's broken emergency shut-off button; and (5) Birdwell's failure to

utilize specific maintenance programs for its equipment and to provide safety training programs for its employees.

### 1. Birdwell's Failure to Train Paulino

Garay and A.O. assert that Birdwell never properly trained Paulino on how to operate the trench roller and that Birdwell ordered Paulino to use the trench roller incorrectly, by instructing him to operate it along the inward side of the concrete wall, even though it knew that using the trench roller in such a manner was dangerous. In analyzing gross negligence claims, we must take the employee's experience into consideration. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 412 (Tex. 2009); *LMC Complete Automotive*, 229 S.W.3d at 476. Additionally, under Texas law, "extreme risk" in the gross negligence context "is a function of both the magnitude and probability of the potential injury." *Graham v. Adesa, Tex., Inc.*, 145 S.W.3d 769, 772 (Tex. App.—Dallas 2004, pet. denied). "To assess the degree of risk, the evidence is viewed objectively from the actor's standpoint." *Id.* at 773.

Garay presented summary judgment evidence from Birdwell employees, including Jerry Travelstead, Birdwell's Health & Safety Manager, that Birdwell did not hold a specific training meeting concerning how to operate the trench roller in a safe manner. It is undisputed, however, that Paulino had worked for Birdwell for five years and thus had five years of experience operating the trench roller at

issue. *See Nabors Drilling*, 288 S.W.3d at 412 (holding that employers owe no duty to warn employees of hazards that are "commonly known or already appreciated" by employee); *LMC Complete Automotive*, 229 S.W.3d at 476 (holding same).

Moreover, Birdwell also presented summary judgment evidence that Paulino himself had taught Cosme Fuentes how to operate the trench roller. Fuentes testified that he warned Paulino not to stand in between the trench roller and the concrete wall, that Paulino disregarded the warning, and that Paulino joked about being crushed by the trench roller moments before the incident. Birdwell also introduced evidence that it held daily safety meetings before beginning work each day, that it provided weekly handouts to its employees on safety topics, and that one of those topics concerned the danger of pinch points and included a warning never to stand between equipment and a fixed point such as a wall. Thus, even taking as true Garay's evidence that Birdwell failed to hold a specific training and safety meeting regarding the trench roller, we conclude that this evidence does not raise a fact issue that ordering Paulino to operate the machine on which he had five years' worth of experience involved an extreme degree of risk when viewed objectively from Birdwell's standpoint at the time of the occurrence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11); *Ellender*, 968 S.W.2d at 921.

26

## 2. *Mechanical Problems with the Trench Roller*

Garay and A.O. argue that summary judgment evidence establishes that the trench roller's remote control was unreliable and had malfunctioned on previous occasions, that the rear safety bar had been missing for long enough that Birdwell should have known that it was missing, that the emergency shut-off switch did not work, and that Birdwell did not maintain the trench roller in accordance with the manufacturer's instructions. Garay and A.O. argue that Birdwell committed gross negligence when it ordered Paulino to operate the trench roller despite these problems with the machine.

Garay and A.O. also argue that Birdwell committed gross negligence when it ordered Paulino to operate the trench roller manually near the concrete wall. As Birdwell points out, however, Garay and A.O. presented no evidence that it ordered Paulino to operate the trench roller manually. Ramon Jaramillo testified that he had seen Paulino operating the trench roller with the remote control on the morning of the incident and that he did not know why Paulino switched to operating the trench roller manually. Garay and A.O. presented evidence that Birdwell's repair shop had repaired the trench roller on several occasions in the two years preceding the incident, including repairing problems with the remote control, but Garay and A.O. presented no evidence that the remote control did not work on the day of the incident or that Birdwell knew that it did not work but

ordered Paulino to operate the trench roller anyway. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (providing that objective component of gross negligence requires consideration of actor's standpoint at time of occurrence); *Ellender*, 968 S.W.2d at 921 (holding same and stating that to satisfy subjective component, actor must have "actual, subjective awareness of the risk involved").

Similarly, Garay and A.O. provided no evidence that Birdwell knew that the trench roller was missing a safety device—the rear safety bar—but ordered Paulino to operate the trench roller anyway. Garay and A.O. point to the post-incident Dynapac report and the OSHA citation, both of which identify the missing rear safety-bar as a problem with the trench roller. However, neither of these post-incident reports establishes that, at the time of the occurrence, Birdwell had actual, subjective awareness of any risk that accompanied operating the trench roller without the safety bar. *See Ellender*, 968 S.W.2d at 921. Birdwell submitted summary judgment evidence demonstrating the contrary—that Birdwell representatives were not aware of the missing safety bar until after the incident because the manual for the trench roller did not identify the bar as a safety device. Birdwell also presented evidence that, at one point, it had the trench roller serviced by a company authorized by Dynapac, the manufacturer, and that company did not identify the bar as a safety device or otherwise inform Birdwell that an essential safety feature was missing from the trench roller. Garay and A.O. thus failed to

28

raise a fact issue on the subjective component of their gross negligence claim with regard to the missing rear safety bar. *See Ellender*, 968 S.W.2d at 921; *see also Andrade*, 19 S.W.3d at 246–47 (holding that, to establish subjective component of gross negligence claim, plaintiff must "show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care").

Garay and A.O. also argue that Birdwell committed gross negligence by requiring Paulino to operate a trench roller with a broken emergency shut off switch. Garay and A.O. again pointed to the Dynapac and OSHA reports which noted that the switch was broken, but they failed to present any evidence that anyone at Birdwell knew, on the day of the incident, that the emergency shut-off switch did not work. They presented evidence of prior repairs that had been done to the trench roller, but none of those repairs involved the emergency shut-off switch, which had never before been identified as a problem. *See Waldrip*, 380 S.W.3d at 138 ("Even assuming that the parking brake itself, and not merely the parking-brake light, was malfunctioning, absent positive proof of knowledge by management, actual knowledge cannot be imputed to UHI based on one entry in a massive database."). The post-incident reports by Dynapac and OSHA, even when taken as true, do not constitute evidence that, at the time of the occurrence, Birdwell knew that the emergency shut-off switch did not work but required Paulino to operate the trench roller anyway. *See Ellender*, 968 S.W.2d at 921.

Thus, Garay and A.O. have not raised a fact issue regarding whether Birdwell had actual, subjective awareness of the risk posed by requiring Paulino to operate the trench roller despite the mechanical problems with the equipment but nevertheless proceeded in conscious indifference to Paulino's safety and welfare. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11); *Ellender*, 968 S.W.2d at 921.

### 3. *Birdwell's Failure to Provide Specific Maintenance and Training Programs*

Garay and A.O. also assert that Birdwell committed gross negligence by failing to provide specific maintenance programs for its equipment or provide specific training on safe operation of the trench roller.

The Texas Supreme Court has held that "[c]orporate safety policies, or the lack of them, can serve as the basis for a gross negligence finding." *Andrade*, 19 S.W.3d at 247. In *Andrade*, the court ultimately held that, under the circumstances of that case, the lack of a corporate safety policy did not support an inference that the employer was subjectively aware or consciously indifferent to the risk of injury. *Id.* at 248; *see also Agrium U.S., Inc. v. Clark*, 179 S.W.3d 765, 768 (Tex. App.—Amarillo 2005, pet. denied) ("[W]hile the existence or non-existence of safety or corporate policies touching upon the work being done may provide some basis for a gross negligence finding, that is not always true.") (internal citations omitted).

Taking Garay's and A.O.'s evidence as true, as we must when reviewing a trial court's summary judgment ruling, Garay and A.O. presented evidence that Birdwell did not provide a formal training session on the trench roller involved in the incident, did not train employees regarding how to turn off the trench roller in an emergency, and did not have a formal safety policy regarding repairs to equipment. We conclude that, under the facts of this case, this evidence does not raise a fact issue on the subjective component of Garay's and A.O.'s gross negligence claims. *See Andrade*, 19 S.W.3d at 247–48; *Clark*, 179 S.W.3d at 768.

Even though Birdwell did not provide a formal training session concerning operation of the trench roller and its safety features, such as how to shut the trench roller off during an emergency, Birdwell did provide Paulino with informal training on the trench roller, and Paulino operated the trench roller for five years without incident. *See Nat'l Convenience Stores, Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("[A]n employer's duty to instruct applies to an inexperienced employee but not to one who is experienced in the work he is assigned."); *Fort Worth Hotel Ltd. P'ship v. Enserch Corp.*, 977 S.W.2d 746, 755 (Tex. App.—Fort Worth 1998, no pet.) ("[T]he lack of formal training received [by the employees] was not gross negligence in light of the hands-on training they received."). Birdwell presented summary judgment evidence that it held daily safety meetings before work began each day, that it

provided handouts that discussed safety topics to its employees on a weekly basis, and that one of those handouts warned employees of the dangers of standing between a piece of equipment and a fixed object such as a wall. Birdwell's failure to hold a safety seminar on the specific trench roller operated by Paulino at the time of the incident does not, under these facts, demonstrate that it acted with conscious indifference. *See Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 172 (Tex. 2005) ("Diamond Shamrock's efforts to protect against those dangers were imperfect; they may have been negligent. But there is no evidence that Diamond Shamrock was unconcerned."); *Clark*, 179 S.W.3d at 767 ("[A]n actor's failure to pursue the safest course available or provide the best warnings imaginable does not necessarily equate to a want of caring.").

Furthermore, although Birdwell did not have a "formal safety policy regarding . . . repairs to equipment," Birdwell did require its employees to inspect their equipment daily and to report any issues to their supervisor. Their supervisor would then contact Birdwell's repair shop to address the problem. The shop also inspected each piece of equipment after a particular job finished and before an employee needed to use the equipment on a new job. Birdwell thus had some equipment-maintenance procedures in place at the time of the incident. *See Ardoin*, 267 S.W.3d at 508 ("The Wyard palletizer had been in use for ten years, and Ardoin produced no evidence that the company's existing safety measures had

32

previously failed to protect employees against this particular risk."). We therefore conclude that, under the circumstances of this case, Birdwell's failure to provide a specific training program on the trench roller and its failure to have a formal safety policy concerning repairs to equipment do not constitute evidence that Birdwell had actual, subjective awareness of a risk of injury to Paulino but did not care about the risk. *See Andrade*, 19 S.W.3d at 248; *Clark*, 179 S.W.3d at 769.

Even when taking all of Garay's and A.O.'s evidence as true, we conclude that Garay and A.O. failed to present evidence raising a fact issue on the challenged elements of their gross negligence claims. We therefore hold that the trial court properly rendered summary judgment in favor of Birdwell.

We overrule Garay and A.O.'s second issue.

### Summary Judgment as to A.O.'s Gross Negligence Claim

In her third issue, A.O. contends that, although she did not respond to Birdwell's no-evidence summary judgment motion and did not participate in the summary judgment hearing, this Court should reverse the summary judgment rendered against her for equitable reasons, specifically, "the principles favoring adjudication on the merits."

Absent a timely response, a trial court must grant a no-evidence motion for summary judgment that meets the requirements of Rule 166a(i). TEX. R. CIV. P. 166a(i) ("The court must grant the motion unless the respondent produces

summary judgment evidence raising a genuine issue of material fact."); *Imkie v. Methodist Hosp.*, 326 S.W.3d 339, 343 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

If a nonmovant wishes to assert that, based on the evidence in the record, a fact issue exists to defeat a no-evidence motion for summary judgment, the nonmovant must timely file a response to the motion raising this issue before the trial court." *Id.* (citing *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 746 (Tex. App.—Houston [1st Dist.] 2008, no pet.)); *see also Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at *5 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.) ("[I]n the face of a legally sufficient motion for no-evidence summary judgment, the nonmovant must file a response to defeat summary judgment regardless of whether the trial court has before it evidence that would defeat summary judgment if attached to a timely response. The nonmovant must bring that evidence to the attention of the trial court or lose.").

Here, A.O. failed to file a response to Birdwell's no-evidence summary judgment motion and did not appear at the hearing on the motion. Birdwell's motion set out the elements of A.O.'s gross negligence claim that, it contended, lacked evidentiary support, and it was, therefore, a legally sufficient no-evidence motion. *See* TEX. R. CIV. P. 166a(i). A.O.'s failure to respond to the no-evidence

motion precludes relief in her favor on appeal. *See Imkie*, 326 S.W.3d at 343; *Landers*, 257 S.W.3d at 746. We therefore hold that the trial court properly granted summary judgment on A.O.'s gross negligence claim.

A.O. cites three Texas Supreme Court cases to support her contention that because Texas public policy favors adjudication on the merits of a dispute, this Court should reverse the summary judgment rendered against her.

The first case A.O. cites, *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307 (Tex. 2012) (per curiam), addresses whether a defendant satisfied the equitable *Craddock* factors for setting aside a no-answer default judgment. *Craddock* applies to situations in which the defendant moves for a new trial. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). A.O. did not move for a new trial seeking to set aside the summary judgment rendered against her, nor has she attempted to establish, either in the trial court or on appeal, the equitable *Craddock* factors.[8] Moreover, the Texas Supreme Court has explicitly held that *Craddock* does not apply when, as here, "summary judgment is granted on a motion to which the nonmovant failed to timely respond when the

---

[8] Even if *Craddock* applied to this situation, A.O. has not established each element necessary to set aside the adverse judgment against her. In particular, A.O. cannot demonstrate that her failure to answer was not intentional or the result of conscious indifference. *See Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). Current counsel for A.O. conceded that A.O.'s previous counsel elected not to respond to Birdwell's no-evidence summary judgment motion.

respondent had notice of the hearing and an opportunity to employ the means our civil procedure rules make available to alter the deadlines Rule 166a imposes." *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 683–84 (Tex. 2002).

A.O. further relies on *Wheeler v. Green*, 157 S.W.3d 439 (Tex. 2005) (per curiam), and *Marino v. King*, 355 S.W.3d 629 (Tex. 2011) (per curiam), for the proposition that this Court should set aside the summary judgment against her on equitable grounds. Both *Wheeler* and *Marino* concerned summary judgments granted after admissions had been deemed against the petitioners and after the petitioners, both acting pro se, failed to file a formal response to the summary judgment motions, although both petitioners appeared at and participated in the summary judgment hearing. *See Marino*, 355 S.W.3d at 630–31; *Wheeler*, 157 S.W.3d at 441. In both cases, the supreme court held that the fact the litigants were pro se, and thus unfamiliar with deemed admissions and summary judgment procedures, was of paramount importance in determining that the litigants had good cause for the withdrawal of deemed admissions and the allowing of a late summary judgment response. *See Marino*, 355 S.W.3d at 633–34; *Wheeler*, 157 S.W.3d at 443–44. Here, however, counsel represented A.O. in the trial court, and counsel specifically elected not to file a summary judgment response on A.O.'s behalf or join Garay's response. The equitable concerns present in *Marino* and *Wheeler* are thus not present here.

36

We overrule Garay and A.O.'s third issue.[9]

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

---

[9] We further note that Garay and A.O. raised identical claims against Birdwell. We have already determined that Garay failed to raise a fact issue on her gross negligence claim sufficient to defeat summary judgment.